IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIBERTY SURPLUS INSURANCE CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-09-3261 |
| ALLIED WASTE SYSTEMS, INC., *et al.*, | § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

## I.    Background

This is a declaratory judgment action to resolve an insurance-coverage dispute.  The

declaratory judgment plaintiff, Liberty Surplus Insurance Corporation, issued a commercial general

liability to the one of the defendants, Associated Marine & Industrial Staffing, Inc. (AMI).  AMI is

in the business of providing temporary workers to clients.  The coverage dispute arises from an

accident involving an AMI employee who was serving as a temporary worker on a garbage truck

for defendants Allied Waste Systems, Inc. and BFI Waste Services of Texas, L.P. (collectively,

"Allied").  The AMI employee was riding on an Allied-leased and -operated truck when it rolled.

The AMI employee died in the accident.  The driver, who was an Allied employee, and another

passenger, who was a temporary employee, also died.

The family of the AMI employee sued Allied in state court, asserting liability for negligence,

negligent entrustment, and gross negligence and vicarious liability for the driver's negligence.

Allied filed a third-party claim against AMI Staffing in the state court, asserting a right to

indemnification under the labor services agreement between them.  Shortly before the state court

case settled, Allied filed cross-claim asserting a similar indemnification claim against AMI in this federal declaratory judgment action.

In this federal suit, Liberty seeks a declaratory judgment that under the CGL policy issued to AMI, Liberty does not owe either defense costs or indemnity to any of the defendants in the underlying state-court suit. Liberty bases its legal arguments on the automobile exclusion of the commercial general liability policy it issued to AMI.

Three motions are pending:

- Liberty moved for summary judgment that it does not have to pay defense costs or provide indemnification under its commercial general liability policy. (Docket Entry No. 27). The defendants have responded, (Docket Entry Nos. 32, 36), and Liberty has replied, (Docket Entry Nos. 49, 50).

- AMI cross-moved for partial summary judgment that Liberty's policy covers Allied's cross-claims against AMI for defense costs and indemnity based on the labor services contract between them. (Docket Entry No. 34). Liberty has responded. (Docket Entry No. 41).

- Allied moved for partial summary judgment that Liberty's policy covers Allied's defense costs and the costs of settling the underlying case. Allied's motion is based on the policy's coverage for AMI's liabilities to Allied under the labor services contract between them. (Docket Entry No. 24). Liberty and AMI have responded. (Docket Entry Nos. 29, 35).

This court heard oral argument on the motions and ordered the parties to produce a copy of the settlement agreement reached in the underlying wrongful-death suit and a brief on the

settlement's effect on the duties to defend and indemnify.  The parties filed their supplemental briefs.  (Docket Entry Nos. 53–56).  In deciding the motions, this court assumes, without deciding, that under their contract, AMI owes Allied defense costs and is obligated to indemnify Allied for the amount paid to settle the state-court suit.  (Docket Entry No. 39).

Based on a careful review of the complaint; the motions, responses, and replies; the summary-judgment evidence; the arguments of counsel; and the relevant law, this court grants Liberty's motion for summary judgment and denies AMI's cross-motion and Allied's motion for partial summary judgment.  The reasons are explained below.  The parties must appear on **January 24, 2011, at 4:00 p.m.** for a status conference to address how best to resolve the remaining issue in the case.

## II.     The Applicable Legal Standards

### A.        Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf*, *Inc. v.  Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402

3

F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## B.  Contract Interpretation

The parties agree that Texas law applies. Under Texas law, insurance contracts are interpreted under ordinary principles of contract law. *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). A court faced with a coverage dispute must give effect to the parties' intentions as expressed by the policy language. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex.1983). The policy terms are given their plain, ordinary meaning, considering the policy as a whole, unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984); *Hartrick v.*

4

*Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 274 (Tex. App.—Houston [1st Dist.] 2001, no pet. h.) ("[W]e construe the terms of the policy as a whole, and consider all of its terms, not in isolation, but within the context of the policy."). Courts cannot consider extrinsic evidence unless the insurance contract is ambiguous. *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1262 (5th Cir. 1997); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 745 (Tex. 2006). "Ambiguity must be evident from the policy itself; it cannot be created by introducing parol evidence of intent." *Fiess*, 202 S.W. 3d at 745 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995)).

Whether an insurer has a duty to defend the insured is a distinct issue from whether the insurer has a duty to indemnify the insured. *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). Texas courts previously held that because the duty to defend is broader than the duty to indemnify, if there was no duty to defend, there was no duty to indemnify. The Texas Supreme Court has clarified that the duty to indemnify is independent from the duty to defend and an insurer may have a duty to indemnify even if a duty to defend never arises. *Id.* at 744.

To determine whether an insurer has a duty to defend, Texas courts apply the "eight-corners rule." That rule "provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from [the] terms of the policy and the pleadings of the third-party claimant." *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Id.* This approach requires that the court compare only the "four corners" of the latest amended pleading with the "four corners" of the policy. *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir. 2005) (applying Texas law). "The focus of the inquiry is on the alleged

facts, not on the asserted legal theories." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *St. Paul Fire & Marine Ins. Co. v. Green Tree Find. Corp.—Tex.*, 249 F.3d 389, 392 (5th Cir. 2001)).  When the rule applies, the court does not examine the merits of the underlying dispute or evidence extrinsic to the policy and the underlying lawsuit pleadings. Artful pleading, absent evidence of collusion between the third-party claimant and the insured, does not create an exception to the general rule.  *GuideOne*, 197 S.W.3d at 311.

      "An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim . . . ." *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)).  Courts must "resolve all doubts regarding the duty to defend in favor of the duty . . . and construe the pleadings liberally." *Zurich*, 268 S.W.3d at 491 (citations omitted).  "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Trinity Universal*, 592 F.3d at 691.  "Although the burden is typically 'on the insured to show that a claim against him is potentially within the scope of coverage under the policies,' when 'the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions applies.'" *Id.* at 691–92 (quoting *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999)).

      In contrast to the duty to defend, the "duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy." *D.R. Horton-Tex., Ltd.*, 300 S.W.3d at 744.  Typically, the court considering the coverage dispute will consider additional evidence needed to establish whether there was coverage in the

6

underlying suit, particularly if the underlying case is resolved without a trial on the merits.  *Id.*; *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008) (holding that the trial court can consider evidence of facts required to determine coverage that were not adjudicated in the underlying litigation).  The trial court is authorized to make factual findings necessary to resolve coverage.  *See Puget Plastics Corp.*, 532 F.3d at 404.

In determining whether there is a duty to indemnify, the insured bears the burden of establishing that its claim is within the policy.  *Grapevine Excavation*, 197 F.3d at 723.  Once the insured has satisfied this burden, the insurer has the burden of showing that an exclusion applies. *Id.*  The insured must then demonstrate that an exception to the exclusion applies.  *Id.*

## III.    The Litigation and the Summary Judgment Evidence

The relevant facts, and which pleadings are relevant, are largely undisputed.  AMI is a temporary employment agency.  It entered into a National Labor Services Agreement to provide employees to Allied, which is in the business of collecting and disposing of garbage.  Under the Labor Services agreement, AMI agreed to

> defend . . . and unconditionally indemnify [Allied] . . . from and against all claims, demands, causes of action, liabilities, costs, expenses (including attorneys' fees, court costs, and expenses of investigation), penalties, fines, assessments and damages . . . [Allied] may at any time suffer or sustain or become liable for by reason of any accidents, damages, violations or injuries (including injuries resulting in death) either to the employees . . . of [AMI] or [Allied] . . . in any manner caused by or resulting or arising from . . . (ii) acts or failures to act by [AMI], or (iii) the work performed by [AMI] or its Personnel or agents in relation to this Agreement, including those claims, demands, causes of action, liabilities, costs, expenses and damages based on accidents, damages or injuries arising from [Allied's] sole negligence, fault or strict liability.  It is the parties' intent that [AMI's] obligations under this Agreement . . . are intended to protect [Allied] against the consequences of [Allied's] own negligence, fault or strict liability . . . .

7

(Docket Entry No. 24, Ex. 1 at 16).

Liberty issued commercial general liability insurance policy number DGLB0188760017 to

AMI.  The policy's insuring agreement stated as follows:

> We pay those sums that the insured becomes legally obligated to pay
> as damages because of 'bodily injury' . . . to which this insurance
> applies.  We will have the right and duty to defend the insured against
> any 'suit' seeking those damages.  However, we will have no duty to
> defend the Insured against any 'suit' seeking damages for 'bodily
> injury' . . . to which this insurance does not apply."

(Docket Entry No. 29, Ex. 2 at AMI0007).

AMI was the named insured.  An endorsement broadened the term "insured," as follows:

### ADDITIONAL INSURED—BY WRITTEN CONTRACT

> WHO IS AN INSURED (Section II) is amended to include as an
> insured any person or organization with whom you have agreed to
> add as an additional insured by written contract but only with respect
> to liability arising out of your operations or premises owned by or
> rented to you.

(*Id.* at AMI00036).

The policy contained two relevant exclusions.  The Auto Exclusion provided that the:

> insurance does not apply to . . . '[b]odily injury' arising out of the
> ownership, maintenance, use or entrustment to others of any aircraft,
> 'auto' or watercraft owned or operated or rented or loaned to any
> insured.

(*Id.* at AMI0009).  This exclusion contained an exception for "[l]iability assumed under any 'insured

contract' for the ownership, maintenance or use of aircraft or watercraft."  (*Id.*).  The policy also

generally excluded claims for "[b]odily injury and 'property damage' for which the Insured is

obligated to pay damages by reason of the assumption of liability a contract or agreement."  (*Id.* at

AMI0008).  The "Insured Contract" Exception stated that the exclusion did not apply to:

8

> liability for . . . damages . . . [a]ssumed in a contract or agreement
> that is an "insured contract" . . . .   Solely for the purposes of liability
> assumed in an "insured contract," reasonable attorney's fees and
> necessary litigation expenses incurred by or for a party other than an
> insured are deemed to be damages because of "bodily injury" . . . .

(*Id.*).  The policy defined an "insured contract" as "[t]hat part of any other contract or agreement

pertaining to your business . . . under which you assume the tort liability of another party to pay for

'bodily injury' . . . to a third person or organization."  (*Id.* at AMI0021).  The parties do not dispute

that the indemnity provision in the Labor Services Agreement between Allied and AMI was an

"insured contract" under the policy.

Terrance Owens was an AMI employee working on an Allied garbage truck under the Labor

Services Agreement on January 7, 2008, the date of the accident at issue.  Owens died when the

Allied garbage truck in which he was a passenger overturned and slid into highway overpass support

beam.  Shortly afterward, Owens's estate and family sued Allied in state court in Galveston County,

Texas.  (*Id.*, Ex. 3).  Allied filed a third-party petition against AMI, seeking defense costs and

indemnity.  (*Id.*, Ex. 3).  Allied's third-party petition alleged that Jimmie Bigham, Jr. had operated

the truck "in his employment as a driver for Allied," with Owens and one other temporary worker,

Rafael Montiel, as passengers.  (*Id.* ¶ 6).  "Owens and Montiel had been picking up trash cans and

emptying them into the back of the Allied truck driven by Bigham along [a] residential route."  (*Id.*).

The truck was "the sole means by which Montiel and Owens could get around to collect trash."

(*Id.*).  "At the time of the accident, Mr. Bigham was apparently preparing to u-turn to the left under

Interstate 45 . . . .  When he did, his truck, which was filled to capacity and [e]n route to the garbage

dump rolled onto its right side.  The cab of the truck slid into a concrete beam supporting the

freeway overpass, crashing the cab and killing all three persons inside."  (*Id.* ¶ 7).  The third-party

petition alleged that "Owens and Montiel were temporary employees who were working at the direction and under the supervision of Jimmie Bigham.  Owens was an employee of AMI, which provided labor for Allied on a national scale."  (*Id.* ¶ 8).

Liberty filed this federal suit on October 8, 2009, seeking a declaratory judgment that it was not required to defend or indemnify Allied or AMI.  (Docket Entry No. 1).  Liberty amended its complaint on February 2, 2010.  (Docket Entry No. 10).  Allied and AMI filed counterclaims against Liberty.  On June 9, Allied filed a cross-claim against AMI in this federal declaratory judgment action.  (Docket Entry No. 39).  The cross-claim alleged the contractual relationship between AMI and Allied but, unlike the state court third-party petition, omitted any mention of the garbage truck and any description of how the men died.  Instead, the cross-claim referred only to an "accident." (*Id.* ¶ 10).

Allied settled the underlying state-court lawsuit on July 8, 2010 for $650,000 in exchange for a full release.  (Docket Entry No. 53).  In addition to the settlement funds, Allied paid defense costs of $685,641.17.  Allied dismissed the third-party petition it had filed against AMI in the state court.

After Allied notified this court of the state-court settlement, Liberty and AMI filed supplemental briefs on whether Liberty has a duty to defend AMI against the cross-claim Allied filed against it in this federal suit.  (Docket Entry Nos. 55, 56).

III.    **Analysis**

A.    **The Policy**

Liberty contends that the Auto Exclusion relieves of it the duties to defend and indemnify the defendants in both the state and federal suits.  Courts have held that liability for the costs to

defend and indemnify an insured for an auto accident, such as the one that killed Owens, falls within similar exclusions, regardless of the legal theories asserted against the insured.  *See, e.g.*, *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 770 (5th Cir. 1999) ("[W]hat [can] an auto exclusion . . . possibly be for, if it is not applicable to a truck running a red light, crushing a car, and killing its occupant[?]").  The Auto Exclusion in the present CGL policy applies when five elements are met: 1) bodily injury; 2) arising out of; 3) ownership, maintenance, use or entrustment to others; 4) of an auto; 5) owned or operated or rented or loaned to any insured.  The parties have identified two contested issues of policy construction:  1) whether the Auto Exclusion applies to claims for indemnity under an "insured contract"; and 2) the definition of "insured."

AMI argues that the Auto Exclusion is irrelevant because Allied's claim for indemnity under the Labor Services Agreement falls within the "Insured Contract" Exception to the exclusion of contractual liability for bodily injury.  The policy generally excluded claims for "[b]odily injury and 'property damage' for which the Insured is obligated to pay damages by reason of the assumption of liability a contract or agreement."  The "Insured Contract" Exception to this exclusion treats contractually-assumed liability for damages from bodily injury and property damage as a subset of "damages because of 'bodily injury' and 'property damage'" that are ordinarily excluded.  The parties agree that the exclusion does not apply because the claim falls within the exception to the exclusion for insured contracts.

But even if the Contractual Liability Exclusion does not apply, the policy still may not cover the claim.  The absence of an exclusion from coverage — or, more precisely, the presence of an exception to an exclusion from coverage — does not equate to coverage.  *See, e.g.*, *Sony Computer Entm't Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1017 (9th Cir. 2008) ("[P]roper

11

coverage analysis begins by considering whether the policy's insuring agreements create coverage for the disputed claim.  If coverage exists, then the court considers whether any exclusions apply.  If coverage does not exist, the inquiry ends.  The exclusions are [not] part of the analysis because they cannot expand the basic coverage granted in the insuring agreement." (citations and quotations omitted)) (California law); *Younglove Const., LLC v. PSD Dev., LLC*, — F. Supp. 2d. —, 2010 WL 2867108 (N.D. Ohio 2010) ("[An] exclusion does not expand coverage beyond the scope of the coverage granting provisions.") (Ohio law); *Hawkeye-Security Ins. Co. v. Bob Propheter Const, L.L.C.*, Civ. A. No. 01 C 3278, 2002 WL 31176183, at *8 (N.D. Ill. Sept. 30, 2002) (rejecting the insured's "attempt to use an exclusion endorsement to expand coverage beyond the basic grant of coverage set forth in the coverage agreement") (Illinois law).

There is no language in the Insuring Agreement providing coverage for contractual liability for damages that are not "because of" covered bodily injury or property damage.  The Auto Exclusion precludes coverage for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated or rented or loaned to any insured."  The Auto Exclusion contains an exception for "[l]iability assumed under any 'insured contract' for the ownership, maintenance, or use of aircraft or watercraft."  The exception does not, however, apply to bodily injury damages arising out of "ownership, maintenance, use or entrustment" of an auto.  Reading the contractual-liability exclusion to supplant the Auto Exclusion would make this exception superfluous.  *See Evanston Insurance Co v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008)  ("We cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable.").  If the Auto Exclusion did not otherwise apply to insured contracts, there would be no reason to provide an exception.  The Auto Exclusion applies,

12

notwithstanding the inapplicability of the Insured Contact Exclusion.  *See Landmark Am. Ins. Co. v. U.S. Fidelity & Guar. Co.*, 116 F. App'x 583, 585–88 (6th Cir. 2004) (holding that the auto exclusion applied to an insured contract under a similar insurance agreement); *Capital Alliance Ins. Co. v. Cartwright*, 512 S.E.2d 666, 668 (Ga. Ct. App. 1999) (analyzing a similar contract and noting that "[t]ypically when one or more exclusions apply to bar coverage, the other exclusions do not").

The second issue is the definition of "insured" in the Auto Exclusion.  The Auto Exclusion only applies if the truck was "owned, operated by or rented or loaned to any insured."  The defendants argue that Allied, whose employee was driving the truck when Owens died, is not an "insured," so the Auto Exclusion cannot apply.  As noted above, the policy "include[s] as an insured any person or organization with whom [AMI] agreed to add as an additional insured by written contract but only with respect to liability arising out of [AMI's] operations." (Docket Entry No. 29, Ex. 2 at AMI00036).  AMI and Allied agreed in the Temporary Labor Services Agreement that Allied would be an additional insured under the policy.  The parties agree that whether Allied is an "insured" for the purpose of the duty to defend turns on whether the liability was alleged to arise out of AMI's operations.

Construing a similar clause, the Texas Supreme Court held that "an event 'respects' operations if there exists a causal connection or relation between the event or the operations; we do not require proximate cause or legal causation."  *Evanston*, 256 S.W.3d at 666 (Tex. 2008) (quotations omitted); *see also Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 497 (5th Cir. 2000) (reaching the same conclusion as *Evanston* before the Texas Supreme Court settled the issue).  This interpretation is based on "the ordinary and natural meaning of the phrase 'with respect to'" and the ease with which the insurance contract could have specified a proximate cause standard.

13

*Evanston*, 256 S.W.3d at 666.  It is consistent with the majority rule.  *Id.*

Courts have held that whether a sufficient causal connection exists between the event causing injury and the named insured's operations depends on whether the worker was doing the work for which the named insured was hired when the injury occurred.  *Compare Market Int'l Ins. Co. Ltd. v. Centex Homes, LLC*, Civ. A. No. 08-5340, 2006 WL 278920, at *5–6 (D. N.J. Feb. 2, 2006) (holding that the injury did not arise out of the named insured's operations when it occurred when the injured party was driving home from work); *Time Warner Warner Entm't Co. v. Travelers Cas. & Sur. Co.*, Civ. A. No. 97-6364, 1998 WL 800319, at *9 (E.D. Pa. Nov. 10, 1998) (holding that an off-the-clock employee's injury did not arise from the insured's operations); *Pro Con Constr. Inc. v. Acadia Ins. Co.*, 794 A.2d 108, 109 (N.H.  2002) (a construction worker's injuries did not arise from the operations of the named insured when he slipped on ice while heading to a coffee break); *with Dartmouth Hitchcock Med. Ctr. v. Cross Country Travcorps, Inc.*, Civ. No. 09-cv-160-JD, 2010 WL 398920, at *4 (D. N.H. Jan. 27, 2010) (a nurse's injury at the hospital while she was "engaged in the work she was hired and furnished to perform" arose from the insured's operations; distinguishing *Pro Con*).

With this background, the pleadings filed in the state and federal courts are examined to determine whether Liberty owes a duty to defend or indemnify.

### B.    Liberty's Duty to Defend

#### 1.    The State-Court Third-Party Petition

The settlement of the state-court case does not moot the issue of the duty to defend.  *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010).  The parties agree that the relevant pleading for the purpose of determining Liberty's duty to defend AMI in the state-court suit is Allied's third-

party petition seeking indemnity.  The facts alleged in Allied's state-court third-party petition make it clear that Allied was an "insured" with "respect to" the accident that caused Owens's death. Owens was an AMI employee assigned to work for Allied.  Owens was riding on an Allied garbage truck when the accident occurred.  The facts alleged in Allied's third-party petition against AMI are that Owens had just finished a residential trash route and was on the way to the junk yard to deposit the trash when the truck rolled over.  Unlike the facts in *Market International*, *Time Warner*, and *Pro Con*, there is nothing in the third-party petition suggesting that Owens was not performing the work he was assigned to do under AMI's contract with Allied.  Notably, neither defendant contends that Owens was not performing his job duties at the time.

The state court third-party petition clearly establishes that the Auto Exclusion applies to preclude Liberty's duty to defend AMI in the state court suit.

### 2.    The Federal Court Cross-Claim

Unlike its third-party petition in the underlying state-court litigation, Allied's federal-court cross-claim against AMI filed in the federal court omitted any mention of the truck or description of the details of how Owens died.  Instead, the cross-claim referred only to an "accident" as the cause of Owens's death.  AMI argues that the facts surrounding Owens's death are irrelevant because the dispute between AMI and Allied is over contractual indemnity obligations, not tort liability.  But the circumstances of Owens's death are relevant to determining coverage, and coverage determinations depend on the facts alleged, not the legal theories asserted.  *Northfield*, 363 F.3d at 528.  Under the eight-corners rule, the duty to defend is defined by the allegations in the complaint and the policy terms.  Allied's cross-claim in the federal court states no facts that fall within the Auto Exclusion.  If the eight-corners rule applies, Liberty is required to provide a defense

in the federal court case.      Liberty argues that Texas law recognizes an exception to the eight-corners rule when a pleading does not allege sufficient facts to determine whether the policy affords coverage.  Allied responds that the Texas Supreme Court has never recognized an exception to the eight-corners rule.

A federal court deciding a state-law issue is bound by the decisions of the state's highest court on that issue.  *Chaney v. Dreyfus Svc. Corp.*, 595 F. 3d 219, 229 (5th Cir. 2010) (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)).  But the Texas Supreme Court has neither adopted an exception to the eight-corners rule nor held that none exists. *Zurich*, 268 S.W.3d at 497.  The Texas Supreme Court has assumed, without deciding, that a limited exception may exist, but did so in a case that fell outside the proposed exception.  *See, e.g.*, *id.* at 498; *GuideOne*, 197 S.W.3d at 308–09.  In the absence of a controlling state-court decision, a federal court must "make an '*Erie* guess' as to how the Texas Supreme Court would apply state law."  *Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d 252, 259 (5th Cir. 2010) (quoting *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009)).

The Fifth Circuit's cases appear inconsistent.  Several panels have made the *Erie* guess that, faced with the issue, the Texas Supreme Court would hold that the eight-corners rule is not absolute. *See, e.g.*, *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 194 (5th Cir. 1998); *John Deere Ins. Co. v. Truckin' U.S.A.*, 122 F.3d 270, 272–73 (5th Cir. 1997); *W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 315 (5th Cir. 1993).  In one case, however, a panel of the Fifth Circuit made an *Erie* guess that Texas would not recognize an exception to the eight-corners rule.  *Northfield*, 363 F.3d at 531.  The court explained,

> In light of the Texas appellate courts' unwavering unwillingness to
> apply and recent repudiations of [the kind of exception the Fifth

16

> Circuit had previously recognized], this Court makes its *Erie* guess
> that the current Texas Supreme Court would not recognize any
> exception to the strict eight corners rule.  That is, if the four corners
> of the petition allege facts stating a cause of action which potentially
> falls within the four corners of the policy's scope of coverage,
> resolving all doubts in favor of the insured, the insurer has a duty to
> defend. If all the facts alleged in the underlying petition fall outside
> the scope of coverage, then there is no duty to defend.  However, in
> the unlikely situation that the Texas Supreme Court were to recognize
> an exception to the strict eight corners rule, we conclude any
> exception would only apply in very limited circumstances: when it is
> initially impossible to discern whether coverage is potentially
> implicated and when the extrinsic evidence goes solely to a
> fundamental issue of coverage which does not overlap with the merits
> of or engage the truth or falsity of any facts alleged in the underlying
> case.

*Id.*  The panel went on to conclude that the exception did not apply to the facts of the case.

Insofar as the *Northfield* court's statement that Texas law recognizes no exception to the eight-corners rule is an alternative holding, not *dicta*, the holding would ordinarily be binding upon this court.  *United States v. Bueno*, 585 F.3d 847, 850 n.3 (5th Cir. 2009) ("This circuit follows the rule that alternative holdings are binding precedent and not *obiter dicta*." (quoting *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 464 (5th Cir. 1991)); *but see In re Soza*, 542 F.3d 1060, 1074 n.20 (Weiner, J., specially concurring) (noting the difficulty in distinguishing between *dicta* and alternative holdings).  As an alternative holding, it is difficult to square with the Fifth Circuit's previous decisions in *John Deere* and *Guaranty National*, which stated that Texas law recognized an exception to the eight-corners rule.  "[A] prior panel's interpretation of state law has binding precedential effect . . . absent a subsequent state court decision or amendment rendering our prior decision clearly wrong."  *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 832 (5th Cir. 2000).  To the extent *Northfield* conflicts with *John Deere* and *Guaranty National*, the rule in the prior cases should apply.  *United States v. Martin*, 596 F.3d 284, 286 n.2 (5th Cir. 2010) (citing *Burge v. Parish of St.*

17

*Tammany*, 187 F.3d 452, 466 (5th Cir. 1999)).  The *Northfield* court did not cite any Texas Supreme

Court decision that made the earlier panel decisions "clearly wrong," as required by *Ford*.  Rather,

the *Northfield* court looked only to lower-court decisions in Texas.  *Northfield*, 363 F.3d at 529–31.

After *Northfield*, another Fifth Circuit panel noted that the Texas Supreme Court in *GuideOne* had

"cit[ed] with approval th[e] court's prediction in *Northfield* that the Texas Supreme Court would

only recognize" a narrow exception to the eight-corners rule.  *Liberty Mut. Ins. Co. v. Graham*, 473

F.3d 596, 600 (5th Cir. 2006)(citing *GuideOne*, 197 S.W.3d at 308–09).  But in *GuideOne*, the court

held that if the exception existed, would not apply to the facts of the case.  *Id.*  As a result, in

*GuideOne*, the Texas Supreme Court had no need or occasion to clarify the existence or extent of

any exception.  No party has cited a Texas Supreme Court decision that would make either position

on whether Texas recognizes an exception "clearly wrong," such that this court would not be bound

by the Fifth Circuit's prior decisions to the contrary.  *See Ford*, 250 F.3d at 832.

       Given the inconclusive state of the precedents, it is fortunately not necessary to resolve

whether Texas law recognizes an exception to the eight-corners rule.  Assuming that the exception

recognized in some decisions of the Fifth Circuit remains viable, it does not apply in this case.

       The exception recognized by Fifth Circuit cases applies only when "it is initially impossible

to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely

to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or

falsity of any facts alleged in the underlying case."  *Liberty Mut. Ins. Co.*, 473 F.3d at 600 (quoting

*GuideOne*, 197 S.W.3d at 308–09 (quoting *Northfield*, 363 F.3d at 531)) (emphasis omitted)).  If the

pleading alleges insufficient facts bring the claim within the scope of coverage, then extrinsic facts

are appropriate.  For example, a court may examine extrinsic evidence to determine whether the

party seeking a defense is an insured under the policy when the pleading does not contain sufficient

18

allegations to allow the court to make that determination. *Northfield*, 363 F.3d at 531 & n.3 (citing *W. Heritage Ins. Co.*, 998 F.2d at 314). If, however, the allegations in the underlying pleading bring the claim within the scope of coverage, it is inappropriate to consider extrinsic evidence to decide if an exclusion applies. *See id.* at 535 ("[T]here is no case in Texas or this Circuit that has ever applied any exception to allow extrinsic evidence where the insurer submits the petition in the underlying suit that does not allege facts sufficient to enable the court to determine whether certain exclusions apply, as distinct from and after the initial inquiry to determine whether coverage is potentially implicated."); *see also id.* at 534 (distinguishing *Guaranty National*, in which the facts alleged in the pleading fell within the exclusion, causing the plaintiffs to fail in their initial burden to show coverage potentially existed). Such "fundamental issues of coverage" include "(1) whether the person sued has been specifically excluded by name or description from any coverage, (2) whether the property in suit is included in or has been expressly excluded from any coverage, and (3) whether the policy exists." *Id.* at 530 (citing *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 621 (E.D. Tex. 2003)). Under no circumstances may a court consider extrinsic evidence that contradicts the allegations contained in a pleading against the insured. *Id.* at 535; *GuideOne*, 197 S.W.3d at 310.

Allied's federal-court cross-claim against AMI alleges that "Allied was sued for damages as a result of an accident occurring on January 7, 2008, in which AMI employees Terrance Owens and two others were fatally injured." (Docket Entry No. 39, Allied's Cross-Claim, ¶ 10). The cross-claim also alleges that Allied suffered damages for which AMI is responsible and which are covered by the policy. (*Id.* ¶¶ 6–9). As Liberty acknowledges, the cross-claim alleges facts that bring the claim within the scope of the policy without triggering an exclusion. It is inappropriate to consider extrinsic evidence, given this record. Even if there is a limited exception to the eight-corners, it

would not apply.  Based on the eight-corners rule, Liberty owes AMI a duty of defense against Allied's federal court cross-claim.

### C.      Liberty's Duty to Indemnify

Unlike the duty to defend, the duty to indemnify depends on the facts as proved.  When the underlying dispute goes to trial, it is often unnecessary for a court to consider additional evidence to determine whether there is a duty to indemnify.  *D.R. Horton-Tex., Ltd.*, 360 S.W.3d at 744.  When the underlying case settles, it is often necessary for the court to consider additional evidence to determine whether there is a duty to indemnify.  *Id.*

In this case, the record is undisputed that AMI provided employees to Allied under the Labor Services Agreement, and that Owens was an AMI employee provided for that purpose.  In Allied's amended answer, it admits that "on January 7, 2008, Owens was fatally injured in an accident involving a garbage truck owned and/or operated by Allied in which he was a passenger."  (Docket Entry No. 39, Allied's First Amended Answer ¶7).  Admissions are conclusively established unless the court allows withdrawal or amendment on the party's motion.  FED. R. CIV. P. 36(b); *Armour v. Knowles*, 512 F.3d 147, 154 n.13 (5th Cir. 2007) (collecting authority).  Neither defendant has contended that Owens was on the garbage truck for a purpose that was not related to his work, nor is there any evidence tending to show that he was.  The uncontroverted summary judgment evidence establishes that the Auto Exclusion applies.[1]  Liberty does not owe any duty to indemnify AMI.

## IV.    Conclusion

AMI's motion for summary judgment is granted insofar as it seeks a declaratory judgment

---

[1]  This conclusion is consistent with Allied's contentions in the now-dismissed underlying state-court litigation.  In its third-party petition, Allied contended that Owens was an AMI employee assigned to Allied.  It further contended that Owens was on the truck because his assignment was to pick up trash and that the truck was on its way to drop off the trash it had collected when the truck overturned, killing Owens.

that Liberty must defend it in this case and otherwise denied.  Liberty's motion for summary judgment is granted insofar as it seeks a declaratory judgment that it owed no duty to defend or indemnify in the underlying state-court litigation.  Allied's motion for summary judgment is denied.

A status conference is set for **January 24, 2011, at 4:00 p.m.** to set a schedule for resolving the remaining issue.

SIGNED on December 20, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

21